IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES ROBERT JOINER #687241 | § | |
| v. | § | CIVIL ACTION NO. 6:08cv104 |
| DEBRA SAUNDERS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff James Robert Joiner, an inmate currently confined at the Billy Moore Unit under the auspices of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c). As Defendants, Joiner sued kitchen captain Debra Saunders, the Compass Group, and an unnamed supervisor for the Compass Group. The Billy Moore Unit is a private prison, for which the Compass Group provides food services.

An evidentiary hearing was conducted on July 29, 2008, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Joiner testified that he had been placed on a diet called the "Diet for Health" because of high cholesterol and acid reflux disease. As part of this diet, he was supposed to receive three ounces of meat.

On November 2, 2007, the portions of meat given to the inmates were so small that Chief Godwin weighed them and found that they were only one ounce. Two inmates who had received a small portion went back through the line and got two additional ounces of meat. When Joiner went back through, however, Saunders said "you're f*cked" and flung her hips and crotch at him three times in a back-and-forth motion, as if to underscore her vulgarity. Joiner replied "you're not going to f*ck me" and Saunders said "yes I am" and repeated her actions. Joiner testified that

1

Saunders thought that Godwin had left but in fact he had not, and Godwin told Joiner that he would write a statement against Saunders.

A few days later, Joiner says, Saunders began to retaliate against him by asking other inmates to find out where he lived, and to have him beaten up. Joiner says that he had been assaulted while at another unit, but does not indicate that anything came of Saunders' threats in this instance.

On March 24, 2008, some five and a half months later, Joiner says that he was placed back on the Diet for Health. When he went to get his diet tray, Saunders saw him. At the evidentiary hearing, Joiner had a statement from an inmate named Jerry Hutchins, who says that he heard Saunders say that she "ought to get someone to whip his [Joiner's] ass, only if I could."

On another occasion, Joiner says, he was in the food line with a kitchen worker standing right behind him. The kitchen worker saw Joiner in front of him and said that he, the worker, had to get to the back of the line so that he would not accidentally get Joiner's tray, because other inmates had been spitting in Joiner's food. Joiner said that it was his understanding that the inmates had been encouraged to do so by Saunders, or that she at least would not do anything to stop it.

Joiner stated that on the day that the meat was weighed, Chief Godwin told him that this was a "breach of contract" and that they "could not get anything out of Sanders." He again said that he went back through the line and that other inmates received extra meat but he did not.

On one occasion, while he was in lockup, Joiner says that he saw something he believed to be "spittle substance" in his food. He refused it and told the captain that he wanted a regular tray; Joiner said that his was the only special diet tray in lockup and so he believed that it could be "easily singled out and targeted."

Joiner stated that he sued the Compass Group and the unnamed supervisor of the canteen services because he had filed grievances against Saunders, but nothing was done to correct the problem. Joiner said that he could not go back on a diet tray because of fear that someone would spit in it.

When asked what injury he had suffered, Joiner said that he had undergone humiliation and that he had been made fun of; he said that other inmates would make comments such as "bring the grease, you're going to get f*cked." He says that he had previously been assaulted at another unit and "does not want to walk around in fear."

Chip Satterwhite, a Regional Grievance Director for TDCJ who was present at the Spears hearing, testified concerning the contents of Joiner's grievance file. Satterwhite said that according to the response to Joiner's Step One grievance, the inmates who received additional food had not eaten, but Joiner had already eaten the food which was on his tray, and so he did not get any more because there was no way to tell how much he had originally received. Joiner conceded that he did not file any grievances against the Compass Group or the unknown supervisor, saying that he did not know that he had to do so.

The Court has received and reviewed copies of Joiner's medical, classification, and grievance records. The Step One grievance filed by Joiner about this incident reads as follows:

> Mrs. Saunders kitchen supervisor refused to give inmate Joiner proper serving portions of meat which is 3 oz. She only gave one ounce, and know this because Chief Godwin weighed it. Then she sexually harassed me. And the first two inmates that had their meat weighed was receiving more meat. When I went to get my 2 more ounces she made the statement "your f*cked" and in a sexual motion she flung her hips and crotch out at me 3 times as if she was trying to have sex with me. This type of sexual harassment over food should not be going on.
>
> [After listing witnesses to the incident, Joiner set out the requested action:] That proper portions of meat servings be served right, and that Mrs. Saunders be investigated for her sexual harassment and profanity or noise pollution. She should act as a professional food service manager instead of a hoodlum.

The response to this grievance reads as follows:

> This office has reviewed all offender and staff statements and finds inconsistencies of the account as you alleged. However, corrective actions were taken and have been addressed. Offender's trays which were justified, with less meat on the tray than required was given extra meat. Due to your tray was empty when you attempted to return it, there was no way to verify how much meat was on your tray. Unit administration shall monitor to assure this alleged behavior is not occurring.

Joiner then filed a Step Two grievance appeal, which reads as follows:

> #1. The matter of the situations are not being addressed or corrected and the grievance response is unsatisfiable with a lack of concern on the facts that if everyone

3

on the diet tray gets served with the same utensil, common sense tells you we all received the same portion of meat, one ounce; supposed to be three ounces. Your own Chief also wrote a statement of the fact that he weighed meat on the trays and the weight of the meat in the utensil it all weighed one ounce, supposed to be three ounces.

#2. The sexual harassment was not even brought up n the grievance response section. The Chief also wrote in his statement that he in fact heard Mrs. Saunders tell me that "I am f*cked." And I do have witnesses who saw her sexual gestures by flinging her hip and crotch out at me 3 times like she was trying to have sex with me.

PD-22 Rules 42d. Sexual misconduct with offenders.
PD-22 Rules 14A Use of profane / abusive language.
PD-22 Rules 50. Sexual harassment.
PD-13 Sexual harassment.

I have medical problems so I was put on a diet tray for health not for starvation or to be harassed. The Doctor ordered this for medical treatment. In the process of my treatment for medical problem with high cholesterol and high sodium I've been harassed in a verbal and sexual manner and not given proper amounts of food servings stated on menu. This is an ongoing situation, happens on a daily basis. Apparently the canteen cannot or has not upheld its contract and violates all OD 22 rules against offenders.

The response to this grievance reads as follows:

An investigation conducted by this office indicates that the unit administration is aware of the shortage of meat on the diet trays on 11/02/07. Administration corrected the situation at the time of the incident. The TDCJ Contract Monitor will continue to monitor the food service department. If it was found that employee misconduct had occurred, appropriate action would be taken. No further action is warranted at this time.

This was the only grievance filed by Joiner which he took to Step Two of the grievance procedure. On December 5, 2007, Joiner filed a grievance, no. 2008055883, complaining that inmates were again being refused proper meat portions, saying that Mrs. Salmon, another canteen manager, was using the same spoon to serve meat that had been previously used, when the meat was found to weigh only one ounce. He says that the spoon is for three fluid ounces but that fluid ounces and solid ounces are different. Joiner also says that he has an informant who has told him that the canteen bosses allow inmates who work in the kitchen to steal meat from the diet trays to make and sell sandwiches, and that these inmates are favored because they are black. He asks that the kitchen staff be trained on the difference between fluid ounces and solid ounces, and that sliced

4

meat is supposed to be sliced and not chopped. He also asks that she (apparently the canteen manager) weigh the meat on the scales, "that is if she knows how to use it."

The response to this grievance was that there was no evidence to substantiate his allegations, and that the evening menu approved by the dietician called for two ounces of sliced turkey. Evidence also revealed that appropriate serving utensils were used to furnish appropriate portions, and according to Saunders, all inmates are treated the same regardless of race, and she does not allow inmates to steal. Joiner did not file a Step Two appeal of this grievance.

In grievance no. 2008113587, Joiner complained that Saunders was refusing to serve proper meat portions and that the menu called for three ounces of beef tips, but she is serving no more than one ounce, in thick gravy so that inmates could not tell how little there was. He says that this happened on March 21, 2008. Joiner complains that there is supposed to be three ounces of meat, not meat and gravy combined, and that the gravy was so thick that it weighed three ounces by itself. He says that this is an ongoing problem, brought about so that Saunders can collect five thousand dollars for not spending the full food budget. For relief, Joiner asks that the five thousand dollar bonus be done away with so that the inmates can be fed in the proper amount, and that meat and gravy be served separately.

The response to this grievance was that appropriate food portions are served and prepared in accordance with the menu, which was approved by the dietician. In the future, the response says, if problems are encountered, the food service manager on duty should be notified. Joiner did not file a Step Two appeal of this grievance response.

There are no grievances which refer to spitting in food. Joiner's medical records contain only one mention of spitting in his food; in March of 2008, he asked that he be taken off of the Diet for Health because he believed that other inmates were spitting in his diet tray, but added that he "felt OK." In addition, an entry in the medical records dated December 15, 2007 reads as follows:

> Submitted a NSC [nurse sick call] requesting to see the doctor about his DFH [diet for health] diet - "I wrote a grievance on the kitchen because they are not giving us

the right portion size of meat and now they are trying to retaliate against me by telling me that since I don't get up and eat breakfast chow, they are going to stop giving me my DFH tray. We get up and eat breakfast so early that if I go home and lay back down after eating breakfast I will throw up my food." The nurse noted that Joiner's skin was warm and dry to the touch and that his breathing was even and unlabored, and explained to him that only the doctor could discontinue an order for the Diet for Health, and Joiner voiced understanding.

On December 17, 2007, Joiner requested that the Diet for Health be discontinued, but no reason for this appears in the medical records other than "I take Prilosec." Later entries in the medical records involve back pain, foot pain, heartburn/indigestion, toenail problems, an allergy to wool, headaches, and blurry vision, but there are no other complaints about his food.

Legal Standards and Analysis

Joiner's first complaint concerns the adequacy of the food, with specific reference to an incident on November 2, 2007. The Fifth Circuit has held that inmates have a constitutional right to receive reasonably adequate food. George v. King, 837 F.2d 705 (5th Cir. 1987). However, the fact that the food does not meet the standards of a state agency does not make it constitutionally deficient. Balli v. Haynes, 804 F.2d 306 (5th Cir. 1986); *see also* Moss v. Ward, 450 F.Supp. 591, 596 (W.D.N.Y. 1978) (being deprived of one or two meals not cruel and unusual punishment). In Talib v. Gilley, 138 F.3d 211, 214 (5th Cir. 1998), an inmate alleged that he was deprived of approximately 50 meals over a five-month period when he refused to comply with TDCJ procedures requiring inmates in administrative segregation to kneel at the back of their cells when their food trays were brought; the Fifth Circuit noted that it was "doubtful" that Talib had been deprived of the minimal measures of life's necessities, given that he had missed only about one out of every nine meals over a five-month period.

In this case, Joiner does not complain of missing meals per se, but rather that inadequate portions of meat were provided, such portions being approximately two ounces short. Joiner does not indicate that this happened at every single meal, although he does refer to it as an "on-going problem"; in any event, the fact that the portions he received were two ounces short of

6

meat on multiple occasions over a period of several months does not show that he has been deprived of reasonably adequate food. Talib, 138 F.3d at 214.

Joiner also complains, with reference to the November 2, 2007 incident, that Saunders "sexually harassed" him through the use of verbal abuse and vulgar gestures. As a general rule, threatening or abusive language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). The use of words, no matter how violent, does not comprise a section 1983 violation. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973).

This reasoning has been applied to prisoner lawsuits claiming sexual harassment. *See* White v. Gutierez, 274 Fed.Appx. 349 (5th Cir. 2008) (inmate alleged that prison guards sexually harassed him by calling him names concerning his sexual orientation; Fifth Circuit held that verbal abuse and threatening language and gestures do not give rise to a cause of action under Section 1983). *Cf.* Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996) (in sexual harassment lawsuit, "mere epithet which engenders offensive feelings" is not sufficient to find such harassment). Joiner's claim that Saunders "sexually harassed" him by telling him that "you're f*cked," together with the making of vulgar gestures, also does not rise to a cause of action under Section 1983.

Joiner also complained about inmates spitting in his food, which he says was done with Saunders' encouragement or acquiescence. However, he offered only hearsay in support of this, in that he says that another inmate told him that other inmates had been spitting in his food. This is not sufficient to support a constitutional claim. *See* Walzier v. McMullen, — F.Supp.2nd —, slip op. no. H-06-2361 (S.D.Tex., March 13, 2008) (unpublished) (available on WESTLAW at 2008 WL 701371) (general assertions of belief that officers were contaminating the plaintiff's food with spit and other substances, in retaliation for his filing of grievances, did not set out a constitutional violation).

Joiner never complained to the medical department about adverse health effects which may have stemmed from eating contaminated food. In March of 2008, he asked the medical department to be taken off of the Diet for Health because he believed that other inmates were spitting in his diet tray, but he added that he "felt OK." On the one occasion when Joiner says that he saw a substance which he believed to be spittle in his food, he was able to reject that meal and not consume it. At the hearing, he testified that the harm which he had suffered was "humiliation."

Even were Joiner's speculative and hearsay allegations regarding spit in his food sufficient to support a constitutional claim, which they are not, the asserted harm of humiliation cannot sustain a Section 1983 lawsuit. Under 42 U.S.C. §1997e(e), no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional institution for mental or emotional injury suffered while in custody, without a prior showing of physical injury. Joiner has failed to set out a showing of physical injury connected with the mental anguish which he claims.

Joiner additionally complains that Captain Saunders has been retaliating against him because he complained about her to Chief Godwin. He says that she has pointed him out to other inmates and had them find out where he lives, that she has made statements about how she would have him assaulted if he could, and that she has encouraged or allowed inmates to spit in his food.

The Fifth Circuit has held that the elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); *see also* Jones v. Greninger, 188 F.3d 322, 325-26 (5th Cir. 1999). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods

v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995). If the inmate is unable to point to a specific constitutional right which has been violated, the claim will fail as a matter of law. Tighe v. Wall, 100 F.3d 41 (5th Cir. 1996); Jones, 188 F.3d at 326. In addition, the retaliatory act taken must be more than *de minimis*, and retaliation is actionable only if it is "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). The Court explained that transfer to a less desirable job within the prison, causing discomfort for a few days, is *de minimis*, but a transfer to a more dangerous prison unit is not.

In this case, Joiner has failed to show that any of the allegedly retaliatory acts by Saunders were more than *de minimis*. The fact that she pointed him out to other inmates or made comments suggesting that she would have him assaulted if she could is not proof of a non-*de minimis* act of retaliation; Joiner acknowledged that he has never been assaulted as a result of Saunders' actions, and verbal threats do not suffice. Bender, 1 F.3d at 274; *see also* Cupit v. Jones, 835 F.2d 82, 84 (5th Cir. 1987) (no constitutional right to a stress-free environment). Joiner's contention that Saunders encouraged or allowed other inmates to spit in his food, as noted above, is speculative and based entirely on hearsay and conjecture. As such, it is not sufficient to show a non-*de minimis* act of retaliation. *See* Spellmon v. Price, 100 F.3d 953 (5th Cir., October 10, 1996) (not selected for publication in the Federal Reporter) (available on WESTLAW at 1996 WL 625422) (rejecting speculative claim of retaliation); Collins v. Tarrant, 132 F.3d 1454 (5th Cir., November 14, 1997) (not selected for publication in the Federal Reporter) (available on WESTLAW at 1997 WL 802094) (speculative allegations insufficient to support a retaliation claim); *accord*, Smith v. Jaramillo, — F.Supp.2d —, slip op. no. SA-05-CA-0713 (W.D.Tex., July 13, 2006) (unpublished) (available on WESTLAW at 2006 WL 1984345) (noting that "generic complaints and speculations" about what two defendants knew or should have known were not sufficient to sustain a Section 1983 lawsuit). Because Joiner has failed to show a non-*de minimis* act which was allegedly taken against him in

retaliation for his engaging in a protected activity, his claim on this point must fail. Morris, 449 F.3d at 686.[1]

Turning to the Compass Group and the unknown supervisor, Joiner testified that he did not file any grievances against them because he did not know that he had to. Thus, it appears that Joiner has failed to exhaust his administrative remedies against these Defendants. Even apart from this, it is clear that his claims against the Compass Group and the unknown supervisor are without merit. Joiner testified that his complaint against these Defendants was that they had failed to respond appropriately to his grievances or to take the proper corrective action against Saunders. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Hence, the fact that neither the Compass Group nor the unknown supervisor responded to Joiner's complaints in the manner which he thought appropriate, or took such corrective action as he saw fit, sets forth a constitutional claim, and so his complaint against these Defendants should be dismissed.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon

---

[1] It appears that the only claims upon which Joiner exhausted his administrative remedies were the allegations concerning the incident on November 2, 2007, in which Saunders denied him an adequate portion of meat and verbally abused him. However, the Court need not reach the issue of exhaustion of administrative remedies because of the disposition of the case on other grounds.

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Joiner's allegations lack any arguable basis in law and fail to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Paterson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 7th day of November, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE